UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

      Plaintiff,

v.                                         Case No. 17-cv-97-pp

R. CASEY MASIAK, *et al.*,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE (DKT. NO. 53) AND STRIKING DKT. NO. 52, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 37) AND DISMISSING CASE**

---

      The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983. Dkt. No. 1. The court allowed him to proceed on a Fourth Amendment excessive force claim against defendants Kurt Brester and R. Casey Masiak, and a Fourth Amendment deliberate indifference claim against defendants Pheuchi Xiong, Michael Scharenbrock and Nicholas Walvort. Dkt. No. 15 at 5-6. The parties filed cross-motions for summary judgment, dkt. nos. 36, 37, which are fully briefed and ready for the court's decision.[1] The court will grant the defendants' motion and deny the plaintiff's motion.

---

[1] The plaintiff filed a "Reply to Defendants' Reply to Plaintiff's Finding of Evidential Contradictions in Defendant's [sic] Motion/Affidavits for Summary Judgment." Dkt. No. 52. The defendants moved to strike this pleading because "[t]here is no procedural provision or legal authority for the Plaintiff to file this pleading." Dkt. No. 53. The plaintiff responded to the defendants' motion and asked to withdraw the reply. Dkt. No. 54. The plaintiff explained that he does not have access to the Federal Rules and did not realize it was procedurally

1

## I. DEFENDANTS' EVIDENCE IN SUPPORT OF THEIR MOTION

The court notes that Brester is the only defendant who submitted an affidavit in support of defendants' motion for summary judgment. Dkt. No. 42. The defendants rely primarily on business records (including police reports, the defendants' "narrative sheets" describing their encounters with the plaintiff, video of the defendants' encounters with the plaintiff, and still shots pulled from the videos). Dkt. Nos. 41-1 – 41-26. John M. Balza, a captain with the City of Green Bay Police Department, submitted an affidavit, swearing under the penalty of perjury that the exhibits are true and correct copies of what they purport to be. Dkt. No. 41.

At summary judgment, a court generally may admit police reports that result from the officer's own observations and knowledge under the business record exception to the hearsay rule (Fed. R. Evid. 803(6)), if "the party seeking to offer the business record . . . attach[es] an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." Latosky v. Strunk, Case No. 08-C-771, 2009 WL 1073680, at *4 (E.D. Wis. Apr. 21, 2009) (relying on Woods v. City of Chi., 234 F.3d 979, 988 (7th Cir. 2000)).

It is not clear to the court whether Captain Balza fits into one of these categories. He does not indicate whether he is a custodian of the documents,

---

improper to file the document. Given the plaintiff's explanation, the court will grant the defendants' motion and strike Dkt. No. 52.

and it does not seem that he has personal knowledge of the incidents described in the documents. He states only that he has "used Green Bay and other law enforcement agencies reports in the past and have found them to be reliable." Dkt. No. 41 at ¶4. If this were all that the defendants had offered, it is likely that the reports would not be admissible as evidence in support of their motion. The defendants also have submitted video evidence, however, which depicts the circumstances described in the written reports. Dkt. Nos. 41-9, 41-10, 41-11.

The plaintiff references these videos in his opposition brief, dkt. no. 48, as well as in his own motion for summary judgment, dkt. no. 36, relying on them as evidence to support his claims. His reliance on (and his failure to object to the accuracy of) the videos is sufficient to authenticate the videos, and the videos are sufficient to authenticate the parts of defendant Masiak's narrative sheet (dkt. no. 41-7)[2] that describe what one can see in the videos. See Latosky, 2009 WL 1073680 at *5. Accordingly, the court finds that the video evidence, the parts of Masiak's narrative sheet that describe what one can see in the videos, and the still shots pulled from the videos are admissible evidence for purposes of summary judgment.

The court also finds that the contents of Masiak's narrative sheet that describe events that one cannot see in the videos (e.g., the events leading up to Masiak's stop of the vehicle in which the plaintiff was riding) have not been

---

[2] As stated, Brester submitted an affidavit, so the court relies on that rather than on his narrative sheet.

properly authenticated, so those aspects of his narrative sheet are not admissible evidence. Further, those portions of the narrative sheet contain only background information; the court does not require that information to rule on the parties' cross-motions for summary judgment.

The court takes the relevant facts from "Defendants' Proposed Findings of Fact in Support of Defendants' Motion for Summary Judgment," Dkt. No. 40, "Defendants' Reply to Plaintiff's Findings of Evidential Contradictions in Defendants' Motion/Affidavits for Summary Judgment," Dkt. No. 50, and the plaintiff's sworn complaint, Dkt. No. 1 (which the Seventh Circuit has instructed district courts to construe as an affidavit at summary judgment, Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996)).

## II. RELEVANT FACTS

On August 18, 2016, a little before 10 p.m., Green Bay Police officers learned that an armed robbery had occurred at a Family Dollar Store on Walnut Street in Green Bay. Dkt. No. 40 at ¶9. The robber had been armed with a handgun, which he had pointed at the store clerk. Id. at ¶10. The plaintiff was identified as a suspect. Id.

About five hours later, at around 3:15 a.m., defendant Masiak was driving on Shawano Avenue in Green Bay when he saw a red Dodge Avenger; he recognized the car as belonging to Stephanie J. Schuyler, the plaintiff's girlfriend. Id. at ¶¶11-14; Dkt. No. 41-7 at 1. The vehicle accelerated and made several turns, leading Masiak to believe that the driver was attempting to elude him. Dkt. Nos. 40 at ¶15; 41-7 at 2-3. Masiak activated his squad car's lights

4

and siren, as the car pulled into an alley, turned onto North Maple Avenue, and finally pulled over at North Maple and Mather Street. Dkt. Nos. 40 at ¶¶16-18; 41-7 at 3. After the car stopped, a woman got out of the driver's seat; Masiak recognized the driver as Schuyler (whom he'd had contact with earlier in the evening while looking for the plaintiff). Dkt. Nos. 40 at ¶¶13, 19; 41-7 at 3.

Schuyler began walking toward Masiak's squad car; he told her to stop, but she just kept walking. Masiak made contact with her at the trunk of her car. Dkt. Nos. 40 at ¶¶20-21; 41-7 at 3; 41-9. While he was talking to Schuyler, he noticed the car shift slightly, so he shined his flashlight into the back seat. Dkt. Nos. 40 at ¶22; 41-7 at 3. Masiak saw a black male (later identified as the plaintiff) lying across the back seat of the vehicle. Dkt. Nos. 40 at ¶23; 41-7 at 3; 41-9. Masiak ordered Schuyler to get on the ground, and he ordered the plaintiff to put his hands on the front seat headrest. Dkt. Nos. 40 at ¶24; 41-7 at 3.

According to Masiak, neither Schuyler nor the plaintiff were listening to his commands: Schuyler tried to get back into the driver seat, and the plaintiff was moving around in the back seat. Dkt. Nos. 40 at ¶25-26; 41-7 at 3; 41-9. At one point, Masiak "kicked the back of the car to get [the plaintiff's] attention." Dkt. Nos. 40 at ¶27; 41-7 at 4; 41-9. Schuyler sat down on the pavement next to the driver's door. Dkt. Nos. 40 at ¶28; 41-7 at 4; 41-9. Masiak could see the plaintiff in the back seat, and observed that the plaintiff had a screwdriver in his right hand; he told the plaintiff to "empty his hands" and put his hands on the headrest of the car. Dkt. Nos. 40 at ¶29; 41-7 at 4.

5

Masiak saw the plaintiff try to hide the screwdriver in his hand, then put his right hand into his pocket. Dkt. No. 40 at ¶30. Masiak saw the plaintiff lay down "several times" in the back seat, and it appeared to Masiak that the plaintiff was reaching for the passenger rear door, so he kicked the door to keep it from opening. Dkt. Nos. 40 at ¶32; 41-7 at 4. Masiak could see that the plaintiff's hands were empty, but he was unsure where the screwdriver was. Dkt. No. 41-7 at 4.

Brester arrived on the scene, and both Masiak and Brester issued commands for the plaintiff to get on the ground. Dkt. Nos. 40 at ¶34; 41-7 at 4. As the plaintiff got out of the car, the officers told him to turn around and get down on the ground, but he did not comply with commands to get on the ground, so Masiak and Brester "went hands on" with the plaintiff, "decentralized" him to the ground and placed him in handcuffs. Dkt. Nos. 40 at ¶¶35-37; 41-7 at 4; 41-9. Officers assisted the plaintiff to his feet, searched him, found nothing of evidentiary value, and placed him in the back of Masiak's squad car. Dkt. Nos. 40 at ¶¶38-39, 41; 41-7 at 4-5; 41-9.

According to Brester, a short time later, he heard "banging noises" coming from inside Masiak's squad car. Dkt. Nos. 40 at ¶43; 42 at ¶5. Officers activated the rear facing camera that points into the backseat of the squad car, so they could record the plaintiff's movements. Dkt. No. 42 at ¶6-7. Officers determined that the plaintiff was banging his head against the fiberglass partition of the squad car, causing a laceration to his forehead. Dkt. Nos. 40 at ¶44; 42 at ¶9; 41-10.

6

Masiak noticed that the plaintiff's head was bleeding, so he called the Green Bay Fire Department Rescue Unit to assess the wound. Dkt. Nos. 40 at ¶50; 41-7 at 5. At one point, an officer opened the squad car's rear door to tell the plaintiff he was going to put the seatbelt on so the plaintiff would no longer hit his head; the plaintiff replied, "I didn't hit my head, dude." Dkt. Nos. 40 at ¶¶48-49; 41-10 at time stamp 00:59-01:01. The officer told the plaintiff an ambulance was coming. Dkt. No. 41-10 at time stamp 00:59-01:07. After the officer closed the squad car door, the plaintiff repeatedly hit his head on the divider between the front and back seats, the side window, and the back window. Id. at time stamp 02:33-05:25. The plaintiff ignored an officer's caution to stop hitting his head. Id. at time stamp 03:09-3:11.

Emergency Medical Services arrived and treated the laceration on the plaintiff's head; they cleaned the cut and put two bandages on his forehead. Id. at time stamp 08:06-15:16. After being treated, the plaintiff again started hitting his head on the seat divider, and the bandages eventually fell off. Id. at time stamp 17:07-19:28.

Masiak transported the plaintiff to the Green Bay Police Department and placed him in an interview room. Dkt. No. 41-7 at 5. While sitting in the interview room, the plaintiff leaned back and hit his head against the wall. Dkt. No. 41-11 at time stamp 07:56-07:58. Officer Xiong entered the interview room, told the plaintiff to stop banging his head, and gave him a cup of water. Id. at time stamp 08:08-09:12. After Xiong left, the plaintiff continued to hit his head

against the wall. Id. at time stamp 09:39-13:01. The plaintiff ignored an officer's command to stop banging his head. Id. at time stamp 09:52-09:54.

Officers eventually entered the interview room and tried to put a protective helmet on the plaintiff, but he refused to let them do so. Id. at time stamp 13:05-13:55. Xiong came in, put fresh bandages on the cut on the plaintiff's head and also tried to put the helmet on the plaintiff. Id. at time stamp 14:25-16:24. The plaintiff asked Xiong not to put the helmet on and agreed that he would stop banging his head. Id.

Officers later escorted the plaintiff to the bathroom, where the plaintiff noticed that he had blood on his head. Dkt. No. 40 at ¶87. The plaintiff asked to go to the hospital. Id. Eventually, the plaintiff was taken to the hospital for medical clearance before being taken to the Brown County Jail. Id. at ¶88. Medical staff glued the cut shut and gave the plaintiff Tylenol. Id. at ¶90-91.

The plaintiff did not provide the court with proposed findings of fact in support of his summary judgment motion. The court has, however, construed his sworn complaint as an affidavit. In the complaint, the plaintiff alleges that Brester and Masiak slammed him on his head as they pulled him to the ground while he was trying to get out of Schyler's car. Dkt. No. 1 at 4. He claims that they did this because "Masiak told Brester that [the plaintiff] had a screwdriver as a weapon." Id. The plaintiff asserts that the emergency medical personnel cleaned and bandaged his head before the officers took him to the police station. Id. at 5. He says that while he was at the station, he asked to use the restroom; while in the restroom, he noticed that his head "was still bleeding

8

profusely." Id. He says that he asked Xiong, Scharenbrock and Malvort for medical attention, but that they ignored him. He says that after two hours and twenty-four minutes, Brester "decided" to take him to the hospital, where medical personnel glued the laceration. Id.

## III. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

9

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007) (finding that no reasonable jury could believe the plaintiff's version because it was "so utterly discredited by the record").

### B. The Plaintiff's Excessive Force Claim

The plaintiff's excessive force claim that Masiak and Brester slammed his head arises under the Fourth Amendment, because he alleges that they used this force against him during his arrest during his arrest. See Lopez v. City of Chi., 464 F.3d 711, 719 (7th Cir. 2006). The court will review the plaintiff's excessive force claim under that amendment's "reasonableness standard." Dawson v. Brown, 803 F.3d 829, 833 (7th Cir. 2015). There are several factors that a court must consider when evaluating an officer's actions, including:

> . . . the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duty.

Id. (citation omitted). According to the Seventh Circuit Court of Appeals, "the court's ultimate goal in examining these factors is to determine 'whether the

10

force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended.'" Id. (citation omitted).

The plaintiff claims that Masiak and Brester "slam[med] [him] on his head as they pulled him to the ground." Dkt. No. 1 at 4. In considering the *defendants'* motion for summary judgment, the court must view facts in the light most favorable to the nonmoving party (the plaintiff). Because videos captured the defendants' encounters with the plaintiff, however, the court must "view[] the facts in the light depicted by the videotape[s]." Scott, 550 U.S. at 380-81. The court finds that no reasonable jury could conclude from the videotapes that Masiak and Brester used excessive force in violation of the Fourth Amendment when they removed the plaintiff from the back of a vehicle, forced him to the ground and placed him in handcuffs.

The videotapes show, contrary to the plaintiff's assertions, that he did not receive an injury to his head when Masiak and Brester removed him from the car. His head never once touched the ground. Rather, the videotapes show that the plaintiff injured his own head, by repeatedly banging it against the squad car windows and the interview room walls.

In the *plaintiff's* motion for summary judgment, the plaintiff asks the court to view the videos. Dkt. No. 36 at 2. He asserts that the video will show that Masiak and Brester slammed the plaintiff to the ground. Id. at 1. While the video *does* show the officers taking the plaintiff down to the ground, it does *not* show them "slamming his head." And in his complaint—his sworn statement— he did not allege that the officers slammed him to the ground. He alleged that

11

the officers slammed his *head*, implying that it was this slamming of his head that caused the laceration for which he received medical treatment. Again, the video does not support the plaintiff's claim.

The plaintiff also makes much in his summary judgment motion of the fact that officers never found a screwdriver or a weapon on his person. Id. at 1. It is not clear how this is relevant to the question of whether the officers slammed his head.

The plaintiff has not presented any evidence, other than his own statement in his complaint, to contradict the video evidence. That video evidence shows that Masiak and Brester did not use unreasonable force when they removed the plaintiff from the car. Because there is no genuine dispute of material fact on this issue, the court will grant Masiak and Brester's motion for summary judgment on the plaintiff's excessive force claim, and will deny the plaintiff's motion for summary judgment on this claim.

  C. <u>The Plaintiff's Deliberate Indifference Claim</u>

Under the Fourth Amendment, the court considers four factors in determining whether an officer's response to a plaintiff's medical needs was objectively unreasonable: "(1) whether the officer ha[d] notice of the [plaintiff's] medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." <u>Ortiz v. City of Chi.</u>, 656 F.3d 523, 530 (7th Cir. 2011). A plaintiff "must also show that the defendants' conduct

caused the harm of which [he] complains." Id. (citing Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)).

In his complaint, the plaintiff alleged that at the police station, officers Xiong, Scharenbrock and Walvort refused his requests for medical care, despite the fact that his head was "bleeding profusely." Again, the video evidence contradicts this claim.

The video from the arrest scene shows the plaintiff repeatedly hitting his head (albeit intermittently and not with a tremendous amount of force) against the squad car windows. The plaintiff eventually succeeds in breaking the skin on his forehead, but the video does not show the wound to be "bleeding profusely," as the plaintiff claims. It appears to have been a minor laceration, easily cleaned up and bandaged by emergency personnel.

The videotapes from the police station show the plaintiff banging his head against the interview room walls and table. After he ignored officers' orders to stop banging his head, officers attempted to place a helmet on him to protect him from himself. During that effort, Xiong again cleaned and bandaged the plaintiff's laceration. Xiong attempted to place the helmet on the plaintiff, but stopped trying after the plaintiff stated he would no longer bang his head. While the plaintiff's laceration may have continued to bleed, it did not do so profusely. Indeed, the defendants' uncontradicted proposed findings of fact assert that the reason hospital staff glued the laceration, rather than giving the plaintiff stitches, was because the laceration was too shallow for stitches.

The undisputed evidence shows that while the plaintiff had a medical need, it was not serious. It is undisputed that the officers were aware of that need, but the evidence shows that officers attempted to address the need at the station, by trying to get the plaintiff to wear a protective helmet and by re-bandaging the wound (Xiong). And it is undisputed that the officers did take the plaintiff to the hospital, where he received treatment. The plaintiff has not identified any genuine dispute as to any material fact that would support a deliberate indifference claim.

In his motion for summary judgment, dkt. no. 36, his list of "evidential contradictions in defendants' motion/affidavits for summary judgment," dkt. no. 50, and his opposition to the defendants' motion for summary judgment, dkt. no. 51, the plaintiff points out minor inconsistencies in various pieces of evidence. None of those inconsistencies are material. The plaintiff emphasizes, over and over, that the officers pushed him to the ground; they don't disagree. The plaintiff emphasizes, over and over, that he was bleeding at the police station; the defendants don't disagree. The problem for the plaintiff is that the videos do not show his head hitting the ground. They *do* show him hitting his own head in the squad car, and again at the police station. They *do* show officers trying to stop him from hitting his head, trying to give him a helmet and bandaging his head at the police station. Whatever small inconsistencies the plaintiff may have identified, none of them change these facts. And these facts demonstrate that Masiak and Brester did not use excessive force, and

that the remaining three defendants were not deliberately indifferent to the plaintiff's medical needs.

## IV. CONCLUSION

The court **ORDERS** that the defendants' motion to strike the plaintiff's memorandum in response to the dispositive motion response is **GRANTED**. Dkt. No. 53. The court has not relied on Dkt. No. 52 in deciding these motions.

The court **ORDERS** that the plaintiff's motion for summary judgment is **DENIED**. Dkt. No. 36.

The court **ORDERS** that the defendants' motion for summary judgment is **GRANTED**. Dkt. No. 37. The court **DISMISSES** this case, and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil

Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**